**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hector Rodriguez Plascencia, | No. CV-25-04140-PHX-DWL (ASB) |
| Petitioner, | **ORDER** |
| v. | |
| Pamela Bondi, et al., | |
| Respondents. | |

Petitioner filed a verified petition for writ of habeas corpus under § 2241 and complaint for injunctive and declaratory relief challenging his immigration detention. (Doc. 1.)[1] In a November 7, 2025 order, the Court ordered Respondents to show cause ("the OSC") why the petition should not be granted. (Doc. 6.) The OSC is now fully briefed.[2] (Docs. 9-10.) For the reasons that follow, the petition is granted and Respondents must either release Petitioner from custody or provide a bond hearing within seven days.

**I.  Background**

Petitioner is a citizen of Mexico who entered the United States without inspection in 1998. (Doc. 1 at 6.) On September 11, 2025, Petitioner was arrested and taken into custody by ICE. (Doc. 9-1 at 3 ¶ 5.) Petitioner's Notice to Appear reflects he is an alien present in the United States who has not been admitted or paroled. (Doc. 8 at 4.) "On

---

[1] Petitioner also filed a motion for temporary restraining order and preliminary injunction. (Doc. 2.)

[2] Petitioner also filed a motion to supplement, which contains the exhibits referenced in (but mistakenly not attached to) the petition. (Doc. 8.) That motion is granted.

October 6, 2025, Petitioner requested a custody redetermination before an Immigration Judge, but his request was denied on the grounds that the Immigration Court lacked jurisdiction because DHS had classified him as subject to § 1225(b)(2)" based on the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, 29 I&N 216 (B.I.A. 2025). (Doc. 1 at 7.) Respondents assert that under *Matter of Yajure Hurtado*, noncitizens present without admission are subject to mandatory detention under 8 U.S.C. § 1225(b), rather than discretionary detention under 8 U.S.C. § 1226(a), because, under 8 U.S.C. § 1225(a)(1), they are deemed "applicants for admission." (Doc. 9 at 11.)

In the petition, Petitioner challenges Respondents' interpretation of 8 U.S.C. § 1225(b)(2). Petitioner requests release from custody or an order directing an Immigration Judge to conduct a bond hearing.

**II.   Analysis**

    **A.   Jurisdictional Arguments**

Respondents contend that "8 U.S.C. §§ 1252(g) and (b)(9) preclude review of Petitioner's claims." (Doc. 9 at 4-6.) Respondents are mistaken, for the reasons set forth in *Echevarria v. Bondi*, 2025 WL 2821282, *2-3 (D. Ariz. 2025).

Respondents also contend that "§ 1252(a)(5) provides that a petition for review is the exclusive means for judicial review of immigration proceedings." (Doc. 9 at 6-7.) This argument fares no better than Respondents' other jurisdiction-stripping arguments—no final order of removal has been issued as to Petitioner and Petitioner does not purport to challenge that nonexistent order. *Singh v. Gonzales*, 499 F.3d 969, 977-78 (9th Cir. 2007) (emphasizing that "Post-REAL ID Act cases considering the applicability of § 1252 have also distinguished between challenges to orders of removal and challenges that arise independently" and citing, with approval, a passage in an earlier case that "the REAL ID Act's jurisdiction-stripping provisions . . . does [sic] not apply [if the] claim is not a direct challenge to an order of removal") (citations omitted).

    **B.   Interpretation of 8 U.S.C. § 1225 and 8 U.S.C. § 1226**

On the merits, Respondents state they "are aware of this Court's prior decision

rejecting Respondents' position" in *Echevarria* "but respectfully maintain that Petitioner has not been deprived of due process, and falls within the definition of an 'arriving alien' warranting mandatory detention as the removal process unfolds." (Doc. 9 at 13.) Among other things, Respondents contend that *Echevarria* did not "consider other pieces of statutory context." (*Id.*) The Court respectfully disagrees, as *Echevarria* contains an extensive discussion of the statutory context. *Echevarria*, 2025 WL 2821282 at *5 ("Although [Respondents'] approach has surface appeal, the Court perceives at least two problems with it: first, it ignores some of the additional requirements imposed by § 1225(b)(2)(A); and second, it fails to account for the broader statutory scheme, particularly in light of how that broader scheme has been interpreted by the Supreme Court."); *id.* at *7 ("Putting aside these textual problems with Respondents' position, Respondents' narrow focus on § 1225(a)(1) also ignores the complexities of interpreting the INA, a dense statute . . . which must be interpreted against the backdrop of our constitutional principles, administrative law, and international treaty obligations. Divining its meaning is ordinarily not for the faint of heart. To that end, in determining whether Congress has specifically addressed the question at issue, the court should not confine itself to examining a particular statutory provision in isolation. Rather, it must place the provision in context, interpreting the statute to create a symmetrical and coherent regulatory scheme.") (cleaned up). Noting in Respondents' brief persuades the Court that this analysis was mistaken.

Respondents also cite a handful of recent decisions in which district courts concluded that individuals like Petitioner are subject to mandatory detention under § 1225(b)(2). *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. 2025), *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. 2025); *Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. 2025); *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, Doc. 9 (N.D. Tex. Oct. 24, 2025). In addition to the cases cited by Respondents, the Court is aware of a few more reaching the same conclusion. *Rojas v. Olson*, 2025 WL 3033967 (E.D. Wisc. 2025); *Valencia v. Chestnut*, 2025 WL 3205133 (E.D. Cal. 2025); *Alonzo v. Noem*, 2025 WL 3208284 (E.D.

Cal. 2025); *Mejia Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. 2025). But it is unsurprising that judges across the country are not in full agreement on how this issue should be resolved—indeed, the Court previously emphasized that "it views this issue as presenting a complicated and debatable question." *Echevarria*, 2025 WL 2821282 at *5. It is also fair to note that the cases cited by Respondents still represent the minority position—in the weeks since the Court considered the issue in *Echevarria*, dozens of other courts have reached the same conclusion. *See, e.g., Quinapanta v. Bondi*, 2025 WL 3157867, *6 (W.D. Wisc. 2025) ("[M]ore than 45 district courts have now rejected similar arguments made by respondents here and ordered bond hearings for noncitizens who, like petitioner, were apprehended within the United States years after entering without admission or inspection unless implicated by any criminal activity covered by § 1226(c). These decisions, along with a growing number of others now including this court have concluded that the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support its application to noncitizens in petitioner's position.") (cleaned up). At any rate, having carefully reviewed the recent decisions adopting the minority view, the Court respectfully declines to revisit the conclusion it reached in *Echevarria*.

…
…
…
…
…
…
…
…
…
…
…

Accordingly,

**IT IS ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted**.

2. Respondents must provide Petitioner a bond redetermination hearing within **seven days** or release him from custody under the same conditions that existed before his detention.

3. Respondents must provide a notice of compliance within **three days** of releasing Petitioner or providing him a bond hearing.

4. Petitioner's Motion to Supplement (Doc. 8) is **granted**.

5. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 21st day of November, 2025.

Dominic W. Lanza
United States District Judge